In re SOULES HOSPITAL AND TRAINING SCHOOL FOR NURSES.

(Supreme Court, Special Term, Erie County.   October 8, 1912.)

1. MOTIONS (§ 59*)—SUCCESSIVE MOTIONS FOR RELIEF.
    While there is no sanction for a motion before one judge at Special Term to review or declare void the order of another judge at Special Term, the proper practice being to move for a rehearing or appeal to the Appellate Division, yet, where the judge making the order is dead, such a motion may be considered on the merits.
    [Ed. Note.—For other cases, see Motions, Cent. Dig. §§ 73–81; Dec. Dig. § 59.*]

2. REFERENCE (§ 61*)—PROCEEDINGS—OBJECTIONS—WAIVER.
    Technical objections to the regularity of proceedings and notice before a referee are waived by a party whose attorney declines to attend or participate in the hearings.
    [Ed. Note.—For other cases, see Reference, Cent. Dig. §§ 93, 101; Dec. Dig. § 61.*]

3. REFERENCE (§ 61*)—PROCEEDINGS—OBJECTIONS—WAIVER.
    The failure of a referee to inquire into one of the issues in a proceeding should not be acquiesced in until the final disposition of the proceeding, since it could be cured if called to the referee's attention.
    [Ed. Note.—For other cases, see Reference, Cent. Dig. §§ 93, 101; Dec. Dig. § 61.*]

4. CORPORATIONS (§ 610*)—DISSOLUTION—SALE OF PROPERTY.
    In proceedings for the dissolution of a corporation, whose stock was principally owned by S. and P., where the corporation's property was advertised for sale pursuant to the order of the court, and bid in by S., and P. did not bid, and it does not appear that he would now offer more for the property than it brought, or that a better result could be accomplished, the matter will not be reopened.
    [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2424–2430; Dec. Dig. § 610.*]

Proceedings for the voluntary dissolution of the Soules Hospital and Training School for Nurses. On motion to set aside the final order confirming the report of the referee. Denied.

A. D. Wales, of Binghamton, Sp. Counsel, for the motion.

Thomas Carmody, Atty. Gen., Walter F. Hofheins, Deputy Atty. Gen.

Tennant & Tennant, of Westfield, opposed.

POOLEY, J. [1] The final order herein was made December 19, 1910, before a justice of this court whose term expired December 31, 1910. This present motion came on for hearing November 6, 1911, nearly a year afterward, and the briefs were not submitted to me for some months after the decease of the justice whose order is sought

to be reviewed. But for these conditions it would be proper to deny the motion, as there is no sanction for the motion before one judge at Special Term to review or declare void the order of another judge at Special Term. The proper practice is to move for a rehearing or to appeal to the Appellate Division. Platt v. New York & S. B. Ry., 170 N. Y. 451, 63 N. E. 532. In view, however, of these peculiar conditions, I have examined into the merits, and have reached the conclusion that the motion must be denied. This matter has been before this court since early in 1906, when the dissolution proceedings were commenced, and the disposition of this motion on the merits has necessitated the examination and study of a vast amount of manuscript, including motion papers in many motions, the minutes and reports of referees, etc. It will not be necessary here, or profitable, to review them; but a brief statement of the history of the case will not be out of place.

This proceeding, while formally on motion of the Attorney General, is in the interest of Minnie M. Proctor, a shareholder in the corporation. Mr. Wales represents her, and has been appointed special counsel to the Attorney General, in order that he, and through him his client, should have representation in any of the proceedings where they choose to appear. The Attorney General's office is not directly active in this motion, although regularly represented otherwise than by Mr. Wales. Prior to January, 1903, Dr. Thomas E. Soules conducted a hospital at Westfield, Chautauqua county, N. Y., and in that month Mrs. Proctor exchanged certain property in Binghamton for a one-third interest in the Soules Hospital, under a partnership arrangement. Subsequently, and in July, 1903, the business was incorporated, and was continued in operation, with Dr. Soules and Dr. Proctor, the husband of Minnie M. Proctor, actively participating, for several years, and until early in 1906, when proceedings were instituted for the voluntary dissolution of the corporation. It appears that Dr. Soules bought up the claims and thus appeared as the only creditor. It is now claimed that the combination of the Soules and Proctor interests was conceived from the beginning and carried on by Soules in fraud of the rights of the Proctors, and that the fraud became apparent before or at the time of the institution of the dissolution proceedings.

These proceedings were brought on notice to the Attorney General, who regularly appeared and participated throughout; the proceedings passing through the successive administrations of four Attorneys General. The charge is made that the Deputy Attorney Generals who appeared from time to time, or some of them, were in conspiracy with others interested, including the receiver, to effect results injurious to the Proctors and in fraud of their rights. An order was made at Special Term appointing a receiver and requiring him to give a bond for $20,000, which was done, and a referee was appointed to take proofs in the matter of the dissolution, and upon his report an order was made at Special Term dissolving the corporation and directing the receiver to sell the property, collect the debts, and pay the creditors of the corporation the remainder, if any, to be distributed to

the stockholders. Various orders were obtained from time to time, which are now severely criticised, and in some instances justly so, owing to the then practice of entering orders without submitting them to the judge granting them. The real criticism, however, as I read it from the papers submitted, goes to the form rather than to the substance, and any or all of these orders and proceedings could readily have been corrected by the simple process of reformation upon the application of any interested party.

The proceedings continued down to the summer of 1907, when Mr. Wales, the attorney acting for Mrs. Proctor, came into the case. A motion was at this time made asking for the discharge of the receiver, and the court appointed Judge Davie, of Salamanca, as referee to examine the receiver touching all matters relating to the receivership. This order was made September 13, 1907, and hearings before the referee were had July 29, 1908, October 20 and 21, 1908, and December 21, 1909. Pending these hearings, and accounting for the inordinate delay, it was deemed necessary and proper to apply to the court for an interpretation or amendment of the order of reference. Mr. Wales' serious illness also occasioned some delay. An order was finally made, broadening the scope of the inquiry, and the reference continued under the new order on January 25, 1910, and the referee made his report December 3, 1910. Mrs. Proctor was represented throughout the reference down to January 26, 1910, when Mr. Wales refused to appear further before the referee.

There was abundant opportunity during all this time to have applied to the court to reform the orders complained of, or to appeal to the Appellate Division; but no such steps were ever taken, except in the one instance stated, and the proceeding was permitted to pass through its various stages down to the application to confirm the final report of the referee, when Mr. Wales appeared and insisted on reviewing the proceedings from the beginning, claiming that he had the right, as special counsel to the Attorney General, to be heard, even in opposition to the Deputy Attorney General. The court permitted Mr. Wales to state his objections to the confirmation of the report, and they appear upon the record. The court, however, refused to recognize Mr. Wales as having any standing in the action, and stated, "You may get it on the record, so that you can review the decision of the court;" and the final order was thereupon made. Nearly a year thereafter this present motion was made, and it has been deemed expedient to examine it fully.

[2, 3] A careful examination of the objections to the confirmation of the referee's report, and of the record and citations claimed to sustain them, results in the conclusion that there is no substantial ground for interfering with the order made. Objections 1 and 2, as to the regularity of the proceedings and notice before a referee, are technical, and in view of the fact that Mr. Wales attended the hearings until he declined to further participate would amount to a waiver. Objection 3 is that the evidence does not accompany the report and that the evidence is not properly certified. The evidence was before the court on motion for the final order, and is all here before me on

this motion as filed by the referee. Objection 4 is that the stenographic minutes "are false, garbled, and largely fictitious." I am unable to find any verification of this charge. Objection 5 is that the referee failed to state the account of the receiver. I find the report fully sets forth the findings and states the account. Objection 6 is that the referee "has entirely ignored and intentionally ignored" the inquiry into the regularity or validity of the dissolution proceedings. I find that the referee reports on these matters. Moreover, any alleged irregularity could have been cured when it occurred, and should not be left or acquiesced in until the final disposition. Objections 7 and 8 are similar to 6, and the above remarks apply to them. The remaining four objections need no comment.

I find nothing in the record to warrant the claims of conspiracy and fraud, involving, as they do, the representatives of the state, the referee, and the stenographer. Irregularities do appear; but they do not affect substantially the purpose of the proceedings to wind up the affairs of this corporation. Subsequent steps corrected or obliterated previous irregularities, and any of them could have been readily corrected specifically, if at any stage of the proceedings they appeared harmful.

[4] Passing, then, from the criticisms of the procedure, and getting down to the real, substantial matter, we find criticism of the results as a business proposition. The property was advertised for sale pursuant to the order of the court, and was bid in by the Soules interest. The Proctors did not bid on the property, and it does not even now appear that they, or any others, would offer any more than the property brought on the sale. Ample opportunity was offered through this long and tedious proceeding to accomplish a better result; but none appeared, and none appears now. So, aside from any formal or informal objections or criticisms, there seems to be no useful purpose to be subserved in extending these proceedings further. The only result of setting aside this order in question would be the opening up of the proceeding anew, to no useful end.

Motion denied, without costs.